IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Kaye M. Lokowich
d/b/a Villano's Bake Shop.

(Chapter 13)

Debtor.                                              Case No. 09-14739

Kaye M. Lokowich

Plaintiff,

v.                                                   Adv. No. 09-317

New Century Mortgage Corporation
Deutsche Bank National Trust Company
Mortgage Electronic Mortgage Registration Systems, Inc., *a wholly owned subsidiary of MERS CORP*,
Barclays Capital (Cayman) Ltd. and Barclays Real Estate, Inc.
MERS CORP
HomEq Servicing
Securitized Asset Backed Receivables, LLC
Sutton Funding, LLC
Sheffied Receivables CP
            Defendants.

MEMORANDUM DECISION

This adversary proceeding against Deutsche Bank National Trust Company ("Deutsche Bank"), as Trustee, and Barclays Capital Real Estate ("Barclays") d/b/a HomEq Servicing ("HomEq") (together "Defendants") alleges fraud and violations of the Truth in Lending Act in connection with the debtor Kaye Lokowich's mortgage on her residence. The Defendants

moved to dismiss and a preliminary hearing was held on May 10, 2010. There, the parties agreed that discovery was necessary to properly plead, after which the Defendants moved for summary judgment. Both parties have submitted briefs and affidavits in support of their positions.

Except as noted, the following is a summary of uncontested facts. Deutsche Bank filed proof of a secured claim for about $937,000, claiming to be the mortgage and note holder. In response, the debtor filed a complaint to determine the invalidity of the Bank's lien on her residence, first because there is no evidence that Deutsche Bank ever received a valid assignment of the mortgage, and second because the debt is unenforceable due, *inter alia*, to fraud in the loan's origination.

The loan was originated by an affiliate of Countrywide called New Century Mortgage. Both Lokowich and Clay Ostrowsky, co-owners, signed the mortgage on December 4, 2006. The mortgagee of record was Mortgage Electronic Registration Systems, Inc. ("MERS") and New Century held the note.[1] Only Ostrowsky signed the note. Lokowich claims that New Century and its agents committed a number of deceptive and fraudulent practices in connection with the loan's origination, including failing to provide her with the proper disclosure statements required under the Truth in Lending Act, hurrying her and Ostrowsky through the closing process without explaining what the two were signing, and promising them a "new loan" in a few months.

---

[1] Apparently this fact did not trouble the state court in granting the foreclosure judgment, but similar separations of note and mortgage ownership in cases involving MERS, Inc. have resulted in holdings that the notes are unsecured. See *Lankmark Nat. Bank v. Kesler*, 216 P.3d 158, 169 (Kan. 2009); *Mortgage Elec. Registration System, Inc., v. Southwest Homes of Arkansas*, 301 S.W.3d 1 (Ark. 2009); *MERS, Inc. v. Saunders*, Slip op. 2010 ME 79, at *1 (August 12, 2010); *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.2d 619 (Mo.App.E.D. 2009).

2

Several months after the loan origination, Lokowich and Ostrowsky sought to refinance, pursuant to the promise by New Century. Allegedly at New Century's suggestion, Lokowich prepared to quitclaim her interest in the property to her co-owner Ostrowsky who had a better credit rating. On April 7, 2007, Lokowich and Ostrowsky entered into a written agreement that if the refinancing was successful, Ostrowsky would pay Lokowich $21,000 and in turn he would retain Lokowich's interest in the property. However, if the refinancing was unsuccessful, Lokowich's "interests in the property [would] remain in full effect and [her] name [would] be put back on the title to the property." On April 26, 2007, Lokowich quit claimed her interest in the property to Clay Ostrowsky by a deed which was properly recorded. The refinancing never took place and Lokowich's name was not "put back on the title" until July, 2009.

In April 2007, New Century filed bankruptcy under chapter 11. At the time of that bankruptcy, New Century was the noteholder and MERS remained the mortgagee. Shortly after the filing, New Century sold its beneficial interest in the note to Barclays d/b/a HomEq. In September 2007, Barclays sold the note to Deutsche Bank. Deutsche Bank still holds the note.

In November 2007, mortgage payments were not being made and MERS, as mortgagee, commenced a foreclosure proceeding in Dane County Circuit Court, naming Clay Ostrowsky as the sole defendant. On November 19, 2007, a *lis pendens* was properly recorded. MERS states that Lokowich was never named as a party to the foreclosure action because she had no recorded interest in the property when the foreclosure action commenced. On April 25, 2008, MERS obtained a judgment of foreclosure against Ostrowsky. Lokowich (and presumably Ostrowsky) have continued to occupy the premises. A foreclosure sale of the premises has never been confirmed.

In June 2009, Lokowich and Ostrowsky each sent HomEq Servicing a "Notice of Rescission" attempting to cancel the loan on the grounds the loan was the result of deceptive lending practices and fraud. Barclays received, but has never formally accepted the Notice of Rescission. In July 2009, Ostrowsky quit claimed Lokowich's interest back to her and Lokowich filed a Memorandum of Interest with the Dane County Register of Deeds. On October 27, 2009, MERS assigned its beneficial interest in the mortgage to Deutsche Bank, as Trustee Securitized Asset Backed Receivables LLC Trust.

Deutsche Bank's initial defense in this proceeding is to ask this court to abstain from hearing the matter pursuant to 28 U.S.C. § 1334(c)(1). Failing that, as indeed it will, the Bank asserts three separate arguments for summary judgment: first, the plaintiff's claims are barred by state law and the Rooker-Feldman doctrine; second, the plaintiff's claims are barred by the doctrine of claim preclusion; and third, there was insufficient service of process. Success on any of these theories renders consideration of the others unnecessary.

### A. Abstention

Deutsche Bank does not contend that jurisdiction is lacking. In fact, this matter is within the core jurisdiction of the bankruptcy court as it is the determination of a claim. Nonetheless, Deutsche Bank asks that this court abstain from hearing the case, citing 28 U.S.C. § 1334(c)(1), and *In re Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184 (7th Cir. 1993) in support of their argument. Section 1334(c)(1) states:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. 28 U.S.C. § 1334(c)(1).

As the Seventh Circuit recognized, abstention is an exceptional choice; generally, bankruptcy courts should exercise their jurisdiction over cases properly before them. *See, In re Chicago, Milwaukee, St. Paul & Pacific R. Co*, 6 F.3d at 1189 (citing *Property & Cas. Ins., Ltd. v. Central Nat. Ins. Co. of Omaha*, 936 F.2d 319, 320-21 (7th Cir. 1991)). In *Chicago, Milwaukee, St. Paul & Pacific R. Co*, the Circuit recognized a number of factors to aid in the determination of permissive abstention. *See id.* at 1189.

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties. *Id.*

This laundry list of considerations provides no specific support for Deutsche Bank's claim. In fact, no reason other than a desire to complicate these proceedings is apparent from Deutsche Bank's pursuit of this request. The request to abstain is denied.

### B. Summary Judgment

FED.R.BANKR.P. 7056(c) and in turn FED.R.CIV.PRO. 56(c), require a court to render summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.BANKR.P. 7056(c).

5

Deutsche Bank claims that the filing of a *lis pendens* on November 19, 2007, means that there is no genuine issue of fact left to be tried. That is true notwithstanding the question of whether Lokowich had an interest in the property at the time MERS initiated a foreclosure proceeding against it. Under Wisconsin law, a plaintiff "[i]n an action where relief is demanded affecting described real property which relief might confirm or change interests in the real property" must file a *lis pendens*, "containing the names of the parties, the object of the action and a description of the land in that affected county." WIS.STAT. 840.10(1)(a) (2007-08). The effect of the *lis pendens* is that: "From the time of filing or recording every purchaser or encumbrancer whose conveyance or encumbrance is not recorded or filed shall be deemed a subsequent purchaser or encumbrancer and shall be bound by the proceedings in the action to the same extent and in the same manner as if the purchaser or encumbrancer were a party thereto." WIS.STAT. 840.10(1)(a). The purpose of the *lis pendens* was to protect both foreclosure plaintiffs and those parties holding unrecorded interests in the foreclosed property. *See, J. & S. Corp. v. Mortgage Associates, Inc.*, 164 N.W.2d 221, 224 (Wis. 1969) (the purpose behind the requirement was to protect the plaintiff from those third parties "secretly holding liens."); *see also Mercantile Contract Purchase Corp. v. Melnick*, 47 Wis.2d 580, 588 (Wis. 1970) (the function of the *lis pendens* "is to protect the rights of holders of interests in land by giving them the opportunity to inform themselves and make themselves parties to an action without prejudice to a plaintiff").

When MERS commenced its foreclosure suit against Clay Ostrowsky, it properly recorded the *lis pendens* in Dane County. At the time the action was commenced, the debtor had no interest of record in the property. The debtor made no attempts to make herself a party to the foreclosure action. The effect of the filed *lis pendens* was to make the debtor a subsequent

purchaser. WIS.STAT. 840.10(1)(a) (2007-08). Because of the debtor's status as a subsequent purchaser, the debtor is now bound by the foreclosure judgment entered against Ostrowsky as if she were a named party in that action. *See* WIS.STAT. 840.10(1)(a) (2007-08).

Thus the *lis pendens* served its purpose in this case. The debtor, who held an unrecorded interest, had the opportunity to be informed by the notice thereby affording her the opportunity to make herself a party to the action. *Mercantile Contract Purchase Corp.*, 47 Wis.2d at 588. Likewise, the *lis pendens* protected the foreclosure plaintiffs by subsequently shielding them from unknown interests or liens, which they could not have discovered after searching the County Recorder's Office. *See, J. & S. Corp.*, 164 N.W.2d at 224. As a subsequent purchaser the debtor is bound by the foreclosure judgment. The time for appealing that judgment is long past.

Lokowich now seeks to re-litigate facts on which the foreclosure judgment was based. The debtor is barred by the doctrine of claim preclusion, which holds that:

> [A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action…the *res judicata* consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

Federal courts must "apply the preclusion law of the state that rendered the judgment to determine whether *res judicata* controls the case." *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007) (citing *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996)). Wisconsin law requires the presence of three elements to apply claim preclusion: (1) an "identity between the parties or their privies in the prior and present suits;" (2) that the "prior litigation resulted in a final judgment on the merits by a court with jurisdiction;" and (3) an

"identity of the causes of action in the two suits." *Sopha v. Owens-Corning Fiberglas Corp.*, 601 N.W.2d 627, 637 (Wis. 1999). The burden to prove these elements listed above is upon the party asserting that claim preclusion applies. *Pasko v. City of Milwaukee*, 643 N.W.2d 72, 78 (Wis. 2002). In addition to these elements, claim preclusion may also operate to preclude a litigant from asserting claims in a subsequent action that the defendant failed to assert in the previous action. *See, A.B.C.G. Enterprises, Inc. v. First Bank Southwest*, 515 N.W.2d 904 (Wis. 1994).

Wisconsin courts have long recognized that nonparties to actions are normally not bound by judgments to which they were not a party. *See McCourt v. Algiers*, 91 N.W.2d 194 (Wis. 1958); *see also Pasko*, 643 N.W.2d at 80. The Wisconsin legislature has created an exception to this rule in foreclosure actions. *See* WIS.STAT. 840.10(1)(a) (2007-08) ("every…encumbrancer whose…encumbrance is not recorded…shall be deemed a subsequent purchaser…and shall be bound by the proceedings in the action to the same extent and in the same manner as if the… encumbrancer were a party thereto"); *see also J. & S. Corp. v. Mortgage Associates, Inc.*, 164 N.W.2d 221 (Wis. 1969) (finding the effect of the *lis pendens* "bound an unrecorded interest holder to the decision as a named party to the case"). Because the debtor in this case was bound to the foreclosure action "as if...[she] were a party thereto," an identity exists between the parties in the foreclosure action and the parties in the instant case.

The existence of privity can also provide a basis for precluding a nonparty from proceeding with a new action. *Pasko v. City of Milwaukee*, 643 N.W.2d 72 (Wis. 2002). Privity exists when "a person is so identified in interest with a party to former litigation that he or she represents precisely the same legal right with respect to the subject matter involved." *Id.* at 78. The uncertainty as to what constituted "privity" gave rise to the highly subjective "virtual

representation" doctrine. *See, In re L&S Industries, Inc.*, 989 F.2d 929, 933 (7th Cir. 1993) (explaining "[u]nder the doctrine of virtual representation, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative"). This doctrine proved to be of little use, and eventually its subjective nature led to a split among the Circuits. *See Klugh v. United States*, 818 F.2d 294, 300 (4th Cir. 1987) (formulating a narrower approach to determine when a party is "virtually represented".); *see also Irwin v. Mascott*, 370 F.3d 924, 930 (9th Cir. 2004) (creating a five-factor balancing test to determine whether "virtual representation" existed in a case).

In response to the split, the U.S. Supreme Court recently shed light on the general rule against nonparty claim preclusion. *Taylor v. Sturgell,* 128 S.Ct. 2161 (2008). The Court held that a nonparty to a prior litigation can be precluded from bringing a new, yet related claim if, *inter alia*, a special statutory scheme "expressly forecloses successive litigation" by nonparties. *Id.* at 2172-73. This and other exceptions are rooted in the "deep historic" tradition that all litigants are entitled to a "full and fair opportunity to litigate" their claims. *Id.* at 2171 (citing *Richards v. Jefferson County*, 517 U.S. 793 (1996)). Common "statutory schemes" which foreclose successive litigation include the bankruptcy code and state probate laws. *See, NLRB v. Bildisco,* 465 U.S. 513 (1984); *see also, Tulsa Professional Collection Services, Inc., v. Pope,* 108 S.Ct. 1340 (1988). In *Pope*, a collection agency challenged an Oklahoma probate statute, which barred the agency's claim because it was not filed within the statutory two-month time period. *Pope,* 108 S.Ct. at 1343. The agency was given notice by publication of the time bar, as required under the statute, but was not given actual notice. *Id.* After the claim was barred, the agency argued that its due process rights were violated. *Id.* On review, the Supreme Court determined that a creditor's due process rights would not be violated if the estate properly

9

provided notice by publication for those creditors not "reasonably ascertainable." *Id.* at 1348. In support, the Court noted that various important state interests were satisfied by upholding the law including Oklahoma's need for expeditious resolution of probate proceedings for purposes of ending legal relationships, settling the estate, and distributing property. *Id.* at 1347. In *Taylor*, the Court interpreted Oklahoma's probate code as exemplifying a "statutory scheme" that precludes nonparty creditors from attempting to assert their foreclosed rights through subsequent litigation. *See, Taylor*, 128 S.Ct. at 2173.

Here, Wisconsin's statutory foreclosure process is analogous to Oklahoma's statutory probate scheme. To initiate the foreclosure process, the creditor must give proper notice to all parties that would be adversely affected by the foreclosure. *See* WIS.STAT. § 841.01 (2007-08) (the foreclosure complaint shall include "the interest of each person claiming an interest known to be adverse to the plaintiff, including unborn and unknown persons…"). Actual notice must be given to those parties holding a recorded interest in the property, and notice by virtue of *lis pendens* must be filed to alert any other unrecorded interest holders. *See* WIS.CT.R.P. 801.02 (named defendants must be served within 90 days of complaint); *see also* WIS.STAT. § 840.10(1)(a) (2007-08) (requiring the *lis pendens* to be filed). If any party so notified fails to assert its interests in the property within the required time period, it effectively loses its right to do so. *See* WIS.STAT. § 840.10(1)(a) (2007-08) ("every purchaser or encumbrancer whose conveyance or encumbrance is not recorded or filed shall be deemed a subsequent purchaser or encumbrancer and shall be bound by the proceedings in the action…"). Wisconsin has strong interests in creating a time bar in foreclosure proceedings, which include preserving the finality of its foreclosure judgments and the certainty of interests in property. *Belleville State Bank v. Steele*, 117 Wis.2d 563, 578 (Wis. 1984) ("purpose of the *lis pendens* statute [is] giving finality

10

to judgments and protecting persons who acquire interests in Wisconsin real property…"). For these reasons, Wisconsin's foreclosure scheme is analogous to those "statutory schemes" contemplated by the Court in *Taylor*. Because the debtor failed to assert any interest she believed she had in the property after the *lis pendens* was filed and before judgment was entered, she is now precluded from re-litigating her asserted interest in the foreclosed property.

A judgment of foreclosure and sale is a final decree, even though the foreclosure process is not complete until the foreclosure sale is held and has been confirmed by the court. *Shuput v. Lauer*, 325 N.W.2d 321, 325 (Wis. 1982). On April 25, 2008, Dane County Circuit Court issued a judgment of foreclosure and sale against Ostrowsky. By nature of the timely filed *lis pendens*, the judgment of foreclosure was final and binding on the debtor. *See* WIS.STAT. 840.10(1)(a) (2007-08). The finality of the judgment satisfies the second element of claim preclusion.

The third element involves the identity between the two causes of action. *See Sopha v. Owens-Corning Fiberglas Corp.*, 601 N.W.2d 627, 637 (Wis. 1999). The debtor strongly argues that the foreclosure action brought by MERS, and her present claim involving predatory lending and fraud, are unrelated claims and therefore share no common identity. While the debtor seeks a strict interpretation of this element, the better reasoned cases adopt the "transactional approach," applied under Wisconsin law. *See Kruckenberg v. Harvey*, 694 N.W.2d 879, 886 (Wis. 2005). Under the transactional approach, a court must determine whether the second case arose from a "common nucleus of operative facts" as the first case. *Id.* It must also analyze not the nature of the claims, but rather the operative facts of the underlying transactions that give rise to the lawsuits. *Id.* The approach reflects the expectation that a party, when given the chance, will present its entire controversy. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 24(2), cmt. a (1982).

Both the debtor's current claim and the foreclosure action arise from the same transaction—the December 2006, execution of the note and mortgage. That transaction, coupled with a subsequent default, formed the basis for the foreclosure action brought against Ostrowsky. Thus an identity exists between the two actions. Because all elements required by Wisconsin law are established under the doctrine of claim preclusion, the debtor is precluded from re-litigating the previously adjudicated facts.

However, claim preclusion does not absolutely bar a defendant, or one in privity with the defendant, from filing a subsequent suit. *Wickenhauser v. Lehtinen*, 734 N.W.2d 855, 864 (Wis. 2007) (if this were not true, "claim preclusion would improperly operate as a compulsory counterclaim rule"). Thus the debtor may still assert her previously unstated claim for fraud, unless she or Ostrowsky were compelled to do so in the foreclosure action.

In Wisconsin, most counterclaims are permissive. WIS. STAT. § 802.07(1) ("A Defendant may counterclaim any claim which the defendant has against a plaintiff, upon which a judgment may be had in the action…"). However, Wisconsin courts have adopted an exception to this rule called the common-law compulsory counterclaim rule. *See Wickenhauser*, 734 N.W.2d at 864. The exception provides that a party seeking to avoid claim preclusion will be barred from bringing a subsequent action if a decision in favor of that party would either nullify the previous judgment or would impair rights established by that judgment. *A.B.C.G. Enterprises, Inc. v. First Bank Southeast*, 515 N.W.2d 904, 908 (Wis. 1994) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(b) (1982)). Thus to avoid the application of the common-law compulsory counterclaim rule, the debtor would have to show that success on her present claims would not "undermine the judgment in the first suit or impair the established legal rights of the plaintiff in the initial action." *A.B.C.G. Enterprises, Inc.*, 515 N.W.2d at 908. She has not done so.

The Wisconsin Supreme Court considered a similar situation in *A.B.C.G. Enterprises, Inc v. First Bank Southeast*, 515 N.W.2d 904 (Wis. 1994). In that case, the bank had obtained a judgment of foreclosure and sale against the plaintiff, A.B.C.G. Enterprises. *Id.* at 906. Thereafter, A.B.C.G. Enterprises filed an action alleging misrepresentation by the bank in the execution of the mortgage. *Id.* The court held that the plaintiff was barred from bringing the action under the common-law compulsory counterclaim rule. *Id* at 909. The court reasoned that to decide otherwise, and allow A.B.C.G. Enterprises to bring their claim for misrepresentation, would nullify the bank's now vested rights to the foreclosed property. *Id.* (citing *Green Spring Farms v. Spring Green Farm Assocs. Ltd. P'ship*, 492 N.W.2d 392 (Wis.Ct.App. 1992)). Thus A.B.C.G. Enterprises was barred from raising a claim for misrepresentation against the bank in a subsequent action.

Similarly, Lokowich is bound by a judgment of foreclosure. She seeks to bring this subsequent action for fraud and violations of the Truth in Lending Act. These defenses were not raised in the foreclosure action. As in *A.B.C.G. Enterprises, Inc.*, because a favorable ruling for the debtor on these claims would nullify the rights in the property that were vested in the Bank, the compulsory counterclaim rule applies. *A.B.C.G. Enterprises, Inc.* 515 N.W.2d at 909. The debtor and Ostrowsky were required to assert these claims as defenses to foreclosure action, and because of their failure to do so, the debtor is barred from asserting them now.

The debtor is bound, as if she were a named party, by the judgment of foreclosure and sale rendered against Clay Ostrowsky. Notwithstanding any interest the debtor had in the property, she is precluded from re-litigating the facts which formed the basis for that judgment and barred, under the compulsory counterclaim rule, from bringing her claims. The Defendants' motion for summary judgment must be granted. It may be so ordered.

Dated: November 19, 2010

_____

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Kaye M. Lokowich
d/b/a Villano's Bake Shop.

(Chapter 13)

Debtor.

Case No. 09-14739

Kaye M. Lokowich

Plaintiff,

v.

Adv. No. 09-317

New Century Mortgage Corporation
Deutsche Bank National Trust Company
Mortgage Electronic Mortgage Registration Systems, Inc., *a wholly owned subsidiary of MERS CORP*,
Barclays Capital (Cayman) Ltd. and Barclays Real Estate, Inc.
MERS CORP
HomEq Servicing
Securitized Asset Backed Receivables, LLC
Sutton Funding, LLC
Sheffied Receivables CP
Defendants.

ORDER

The Court having reached the conclusions of law contained in the memorandum decision filed this date, it is hereby ORDERED that the Defendant's motion for summary judgment be GRANTED.

Dated: November 19, 2010

/s/ Robert D. Martin

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE